No. 14,392.

### NACE v. THE STATE.

CRIMINAL LAW.—*Keeping Disorderly Liquor Shop.—Statute Construed.*—Under section 2097, R. S. 1881, which provides that "Whoever keeps a place where intoxicating liquors are sold, bartered, given away, or suffered to be drunk in a disorderly manner," etc., shall be guilty of a misdemeanor, the offence consists in keeping the place in a disorderly manner.

SAME.—*Continuous Offence.*—The provision of such section that whoever keeps a place where intoxicating liquors are sold, in a disorderly manner, " shall be fined, for every day the same is so kept, not more than one hundred dollars nor less than ten dollars," creates one continuous offence, the length of time the place is kept, prior to the prosecution, in the manner prohibited, being important only in measuring the punishment.

SAME.—*Justice of Peace.—Jurisdiction.*—Where an affidavit based on such section is filed before a justice of the peace, charging that the defendant has kept a disorderly place for one year, the minimum punishment for the offence charged, being ten dollars for each day, exceeds the justice's jurisdiction, and a judgment of conviction rendered by him is void. The justice having no jurisdiction, the circuit court could acquire none by appeal, and should have discharged the defendant.

From the Howard Circuit Court.

*J. C. Blacklidge, W. E. Blacklidge, B. C. Moon* and *A. C. Bennett,* for appellant.

*L. T. Michener,* Attorney General, *J. H. Gillett* and *A. B. Kirkpatrick,* for the State.

BERKSHIRE, J.—This was a criminal prosecution originating before a justice of the peace. The charge in the affidavit is the keeping of a disorderly house.

The prosecution rests upon the following section of the R. S. of 1881:

"Section 2097. Whoever keeps a place where intoxicating liquors are sold, bartered, given away, or suffered to be drunk in a disorderly manner, to the annoyance or injury of

any part of the citizens of this State, shall be fined, for every day the same is so kept, not more than one hundred dollars nor less than ten dollars."

The appellant was tried and convicted before the justice; from the judgment of the justice he appealed to the circuit court, and was again tried and convicted.

In the justice's court he was adjudged to pay a fine of twenty-two dollars and fifty cents, and in the circuit court a fine of one hundred dollars.

There was a motion in the circuit court, made by the appellant, to quash the affidavit, which was overruled, and the proper exception reserved.

This motion brings in question for construction the section of the statute above set out.

The charge in the affidavit is, " that on or about the 27th day of July, 1886, and for a period of one year prior thereto continuously, at the county of Howard and State of Indiana, William F. Nace, late of said county and State aforesaid, did then and there unlawfully keep a place where intoxicating liquors were sold, bartered, given away, and suffered to be drunk in a disorderly manner, by then and there unlawfully harboring, entertaining and permitting within said place Emma Bradford, Nellie Hamilton, Cora Gray, and divers other persons, both male and female, to this affiant unknown, all of whom were then and there persons of bad repute for virtue, chastity, morality and peaceableness, and while then and there in said place unlawfully allowing and permitting the said persons of bad character for virtue, chastity, morality and peaceableness to quarrel, curse, swear, fight and riot, and use other improper and obscene language, and by then and there unlawfully suffering, allowing and permitting said persons of bad character for virtue, chastity, morality and peaceableness to indecently expose their persons, and by then and there unlawfully suffering, permitting and allowing divers other persons, both male and female, to this affiant unknown, to have unlawful, promiscuous and indiscriminate

sexual commerce, all to the annoyance and injury of William Becktell, and divers other persons to this affiant unknown, all of whom were citizens of the county of Howard and State of Indiana, residing within sight and hearing of said place so unlawfully kept by said William F. Nace."

The contention of counsel for the appellant is, that the keeping of a place "in a disorderly manner," where intoxicating liquors are sold, bartered, given away, or suffered to be drunk, is not an offence within this statute. That the words "in a disorderly manner," refer not to the place kept, but to the acts of selling, bartering, giving away, or suffering to be drunk, at or in the place kept, and as the affidavit fails to allege any such disorderly·acts, it is bad for that reason, and should have been quashed.

We are not of this opinion.

Suppose the section is transposed so as to read thus:

"Whoever keeps a place in a disorderly manner where intoxicating liquors are sold, bartered, given away, or suffered to be drunk, to the annoyance or injury of any part of the citizens of this State," etc.

When thus transposed there is no difficulty as to the construction to be placed on this statute. It at once becomes manifest that the words "in a disorderly manner" refer to the place that is kept, and not to acts of sale, barter, giving away or drinking of intoxicants.

It will be difficult to transpose the language employed so that the section will bear a different construction from the one we have stated.

Again, if a comma is placed between the words "drunk" and "in," the section will read thus:

"Whoever keeps a place where intoxicating liquors are sold, bartered, given away, or suffered to be drunk, in a disorderly manner." The use of the comma removes all doubt as to what the construction should be.

But we can imagine no reason for which the Legislature would prohibit one who keeps a place where intoxicating

liquors are sold and drunk from carrying on his business in that regard in a disorderly manner, and leave him perfectly free to encourage and maintain every other species of disorderly conduct at his said place.

The intention of the Legislature in the enactment of this statute is very manifest.

The appellant moved in the circuit court in arrest of judgment, and for a discharge from the prosecution.

There is but one central question raised by these motions, and our reasoning and the authorities cited will apply alike to both.

The question presented by these motions is more serious than the one we have considered.

They bring in question the jurisdiction of the court over the offence charged in the affidavit. Justices of the peace have jurisdiction in criminal cases such as is given to them by statute, and no other.

The following are all of the sections of the statute that relate to the jurisdiction of justices in criminal cases. R. S. 1881:

" 1634. When the offence charged is a felony, and the justice, upon the hearing, is of the opinion that the accused should be held to answer such charge, he shall be recognized to appear at the next term of the criminal court of such county, or, if there be no criminal court, then to the circuit court of such county.

" 1635. If the offence charged be a misdemeanor, and one that the justice of the peace has jurisdiction to punish, the prisoner or the State may demand a jury, which may be empanelled and sworn as in other criminal cases; or he may be tried by the justice.

" 1636. Such justice or jury, if they find the prisoner guilty of a misdemeanor, shall assess his punishment; or if, in their opinion, the punishment they are authorized to assess is not adequate to the offence, they may so find, and, in

such case, the justice shall hold such prisoner to bail for his appearance before the proper court, or commit him to jail in default of such bail.

"1637. The jurisdiction of justices of the peace in criminal cases shall be co-extensive with their respective counties, and they shall have exclusive original jurisdiction in all cases where the fine assessed can not exceed three dollars, and concurrent jurisdiction with the criminal court and circuit court to try and determine all cases of misdemeanor punishable by fine only; and in trials before justices, fines to the extent of twenty-five dollars, with costs, may be assessed; and they shall have jurisdiction to make examination in all cases, but they shall have no power to adjudge imprisonment as a part of their sentence, except in the manner specially provided in this act."·

Construing these sections together, we state our conclusions as to the jurisdiction of a justice of the peace in criminal cases as follows:

1. He has jurisdiction to hold a preliminary examination when a person is brought before him charged with a felony, and if, in his opinion, the accused should be held to answer such charge, to recognize him to the criminal or circuit court.

2. If the offence charged is a misdemeanor, and one *that the justice has jurisdiction to punish*, as provided in section 1635, a jury may be demanded, or, by the consent of the State and the defendant, the justice may try it.

3. And if it is determined upon the trial by the jury, or the justice, as the case may be, that the punishment which may be assessed is not adequate to the offence, the justice may recognize the accused to the proper court.

4. The jurisdiction of justices is co-extensive with their respective counties; and in all cases where the punishment can not exceed a fine of three dollars, their jurisdiction is exclusive, and concurrent with the criminal and circuit court, when imprisonment is not a necessary part of the punish-

ment, and where a fine may be assessed as low as twenty-five dollars.

5. In all cases where the fine can not be less than twenty-five dollars, or where imprisonment must be a part of the sentence, justices have no jurisdiction. *State* v. *Creek*, 78 Ind. 139.

The statute, as we construe it, which supports this prosecution, creates one continuous offence, and, no difference how long continued, there can be only one prosecution because of what has occurred antecedent to the prosecution.

" Whoever keeps a place \* \* \* shall be fined, for every day the same is so kept, not more than one hundred dollars nor less than ten dollars."

· The keeping of a place in the manner prohibited constitutes the offence, and the length of time it has been kept is only important for the purpose of measuring the punishment.

If the law has been violated for five days, the minimum punishment is $50; if for three hundred and sixty-five days, the minimum punishment is $3,650. Whart. Crim. Pl. and Prac., sections 125 and 472; *Commonwealth* v. *Robinson*, 126 Mass. 259; *State* v. *Lindley*, 14 Ind. 430; Moore Crim. Law, p. 824, note 3; *Overman* v. *State*, 88 Ind. 6.

The charge in the affidavit is that there was a violation of the statute from the 27th day of July, 1885, to the same day in the year 1886—three hundred and sixty-five days.

The minimum fine upon conviction would largely exceed the justice's jurisdiction; therefore any judgment or sentence which he rendered in the case was a mere nullity. *Horton* v. *Sawyer*, 59 Ind. 587; *Smelzer* v. *Lockhart*, 97 Ind. 315; *Wakefield* v. *State*, 5 Ind. 195; *Commonwealth* v. *Mitchell*, 115 Mass. 141; 1 Bishop Crim. Proceed., section 394.

As he had no jurisdiction, the circuit court acquired no jurisdiction. The jurisdiction of the circuit court depended entirely upon the justice's jurisdiction. ·*Horton* v. *Sawyer*, *supra*; *Mays* v. *Dooley*, 59 Ind. 287; *Sturgeon* v. *Gray*, 96 Ind. 166.

The appellant should have been discharged by the circuit court.

The judgment is reversed, with direction to the circuit court to discharge the appellant.

