SUPREME COURT OF INDIANA,

No. 10,760.

## OVERMAN v. THE STATE.

CRIMINAL LAW.—*Intoxicating Liquor.*—*Keeping Disorderly House.*—*Evidence.*
—Proof of disorder in a single instance is not sufficient to support a prosecution under section 2097, R. S. 1881, for keeping a place, where liquors are sold, in a disorderly manner.

From the Wayne Circuit Court.

*F. V. Anderson* and *H. U. Johnson*, for appellant.

*F. T. Hord*, Attorney General, and *C. E. Shiveley*, Prosecuting Attorney, for the State.

NIBLACK, J.—This was a prosecution against the appellant, who was a licensed vendor of intoxicating liquors by retail, for keeping his house in a disorderly manner. R. S. 1881, section 2097.

The prosecution was commenced by the filing of an affidavit before a justice of the peace, where there was a judgment against the appellant. Upon an appeal to the circuit court, and a trial by the court, the appellant was found guilty as charged, and adjudged to pay a fine of $10, and costs of suit, amounting to a considerable sum.

Several questions were reserved upon the proceedings below, but the only claim made here for a reversal of the judgment is based upon the alleged insufficiency of the evidence to sustain the finding of the court.

The prosecuting witness, who was the chief of police of the city of Richmond, after describing the appellant's place of business and the business in which he was engaged, said that he, witness, had not seen any fights since 1881; that he had frequently seen persons at the appellant's place of business, in the day time and at night, two or three times a week, most of the disorder there being since 1881; that he remembered the time of the Jones–Arkenburg trouble, and knew of the parties being arrested, but did not know anything personally of the difficulty, only knowing that arrests were made.

It was then made to appear by the evidence that one night in January, 1882, several persons, in a more or less intoxicated condition, came to the appellant's saloon, and, by cursing, swearing, loud talking, hallooing, threatening to fight, and other violent demonstrations, made quite a disturbance with, and in the presence of, others then present, refusing either to desist or to leave the premises, as requested by the appellant; that the conduct of these persons was so threatening that a policeman, who was called to assist in restoring order, was afraid to attempt to arrest any one of them by himself, and went out and obtained the assistance of two other policemen before arresting the principal offender. Several persons residing in the immediate vicinity testified that they were very much annoyed with the noise and tumult resulting on this occasion.

All the evidence having relation to any particular disorderly conduct at the appellant's saloon, seemingly and undoubtedly, had reference to the occurrences on the night in question, and there was no evidence tending to establish the manner in which his saloon was generally kept.

The appellant, waiving all question as to whether he was personally guilty of any misconduct at the time particularly referred to by the witnesses, maintains that the evidence was not sufficient to sustain the charge preferred against him; that the evidence only established a single case of disorder, which was insufficient to support the charge that he had *kept* his house or saloon in a disorderly manner.

In referring to what is required to establish a charge that a house in which intoxicating liquors are sold is kept in a disorderly manner, Bicknell, in his work on Criminal Practice, at page 402, says: "To prove this allegation, it seems necessary to show that the disorder was continuous, or, at least, was repeated often enough to indicate a manner of keeping. A nuisance implies permanence, and an isolated instance of disorderly conduct would not prove a 'keeping in a disorderly manner.'"

Wharton on Criminal Law, also, classing a disorderly house as a nuisance, says that "Nuisance to *all* the neighborhood need not be proved, nor, if the house be shown to be disorderly, is proof of outside riot or disorder in the vicinity necessary. On the other hand, a single riot does not create a disorderly house, nor a single act of lewdness, or even continuous acts of lewdness by one person, a bawdy-house." Vol. 2, 7th ed., sec. 2399.

Bishop on Criminal Law, referring to tippling shops, says: "Aside from statutory provisions, a crime is not committed by selling intoxicating liquor. But if one keeps a house or shop, open to the public, and there sells such liquor to persons generally, who come together, and, stimulated by it, or otherwise, make disturbance, or commit acts of immorality, or in any manner violate public decency and decorum, his place is a disorderly house, and he may be indicted." Vol. 1, 5th ed., sec. 1113.

This extract from Bishop carries with it the obvious implication that disorder in a tippling house must be to some extent, at least, continuous, to make the place a disorderly house. *State* v. *Reckards*, 21 Minn. 47; *Dunnaway* v. *State*, 9 Yerger, 350.

Counsel for the State admit the rule to be that a single riot or disorderly occurrence does not create a disorderly house, but insist that the testimony of the prosecuting witness established the commission of other acts of disorder within the period of time covered by the affidavit, thus showing repeated instances of disorder during that time, and giving a disorderly character to the manner in which the house was kept. In this connection it ought, perhaps, to be stated that when the prosecuting witness was interrogated as to particular instances of disorder at the appellant's saloon, of which he had any knowledge, he referred only to the same occurrences, on a night in January, 1882, concerning which the other witnesses at the trial testified as herein above set forth, and told what

he saw, heard and did on that occasion. As must have been observed, in his allusion to the Jones-Arkenburg trouble, he did not in any way directly connect it with the appellant's saloon. Besides, all he said concerning that trouble was merely hearsay evidence. As we construe the testimony of the prosecuting witness, he claimed to have personal knowledge of only one disturbance at the appellant's place of business, and that was the one to which all the other witnesses made reference as above.

What we have said brings us necessarily to the conclusion that the finding of the court was not sustained by sufficient evidence, and that, for that reason, a new trial ought to have been granted.

The judgment is reversed, and the cause remanded for a new trial.